UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ANOSH AHMED, et. al.

Case No.: 25 CR 321

Honorable Sharon Johnson Coleman

## STATUS REPORT

The UNITED STATES OF AMERICA, by its attorney, ANDREW BOUTROS, United States Attorney for the Northern District of Illinois, hereby files this Status Report:

1. On June 12, 2025, the grand jury returned an indictment charging, among other things, (1) defendants Anosh Ahmed and Mahmood "Sami" Khan in a scheme to commit wire fraud; (2) defendants Ahmed and Mohammed Sirajudeen in a conspiracy to commit violations of the Anti-Kickback Statute ("AKS"), and (3) defendants Ahmed, Khan and Suhaib Chaudhry with a conspiracy to launder the proceeds of the wire fraud scheme and AKS conspiracy.

2. As the indictment describes in greater detail, defendants Ahmed and Khan defrauded the Health Resources and Services Administration ("HRSA") by billing the government for Covid-19 tests that had not actually been performed, first at O'Hare Clinical Labs ("OCL") in Chicago, and then at a series of labs – Summer, Tristate, Softland, and Apollo – in Texas. During and after the wire

1

fraud scheme, Ahmed, Khan, Sirajudeen and Chaudhry also conspired to launder the fraud proceeds—the funds reimbursed to the labs by HRSA—through various bank accounts associated with the individual labs.

3. Trial is set for July 9, 2026. Because Ahmed is out of the country pending extradition, at this time, trial is expected to go forward against defendants Khan and Chaudhry.

4. On November 7, 2025, defense counsel filed a motion requesting the government to file a Bill of Particulars related to Count 19, the conspiracy to commit money laundering. Doc. 69. On February 27, 2026, the Court ordered the government to do so. Doc. 81.

5. On March 30, 2026, the government filed a Bill of Particulars that described the financial activity that was the basis for Count 19 by setting forth (1) the bank accounts in which that activity occurred at OCL, Summer, Softland, and Apollo;[1] (2) the time period during which that financial activity occurred; (3) whether the financial activity in that account concerned the proceeds of the wire fraud scheme or the AKS conspiracy; and (4) which account initially received those SUA proceeds. Doc. 82.

---

[1] The government does not allege that the fraud proceeds received by Tristate Lab were involved in the money laundering conspiracy.

6. As set forth below, the Bill of Particulars sufficiently identifies the money laundering transactions and financial activity that are the basis of the conspiracy charge in Count 19, and the government provided materials and information during an April 2, 2026 phone conference that went beyond what is required by a charging document or, indeed, at this stage of discovery, to assist counsel in preparing for trial.

7. At a status hearing on March 31, 2026, government counsel explained that all of the transactions occurring during the time period specified in the Bill of Particulars constitute evidence of the money laundering conspiracy. Thus, consistent with their obligation to put counsel on notice of the nature of the charges described in the Indictment, the Bill of Particulars was drafted to capture the full evidentiary basis of the money laundering conspiracy alleged in Count 19, which is not necessarily limited to transactions that could stand alone as violations of 18 U.S.C. 1956 and 1957.

   a. With respect to Softland and Apollo specifically (identified in paragraphs (b)(i) and (c)(i) in the Bill of Particulars), the Bill of Particulars identifies the specific transactions constituting money laundering because, as counsel explained at the hearing, all of the activity in those accounts constitute violations of 18 U.S.C. 1957. The only financial activity that occurred in those accounts was the receipt of the HRSA funds generated by those labs (the fraud proceeds) into the

account, the subsequent transfer of the majority of those proceeds out of the account into an account controlled by Ahmed, and the purchase of cashier's checks by Chaudhry and Khan, respectively. Thus, the transactions in those accounts that constitute violations of 18 USC 1957, and their SUA source, have been identified by the Bill of Particulars.

b. With respect to identifying the specific transactions violating 18 U.S.C. 1956 and 1957 in the OCL and Summer Accounts (described in paragraph 1(a)(i)-(ix) and 1(d)(i)-(iv), respectively), government counsel explained that Chaudhry and Khan have not been charged with standalone money-laundering violations, and that the basis for the money-laundering conspiracy included financial transactions beyond conduct that might support standalone money laundering transactions. In any event, defense counsel has the underlying records showing the specific transfers during those periods, and counsel offered to confer with defense counsel to distinguish which individual transactions constituted money laundering.

8. To that end, on April 2, 2026, government counsel provided to defense counsel draft charts summarizing the financial activity and the flow of funds in the OCL and Summer accounts identified in the Bill of Particulars. These charts are essentially an advance draft copy of a trial exhibit, tendered 3 months in advance of trial, and went well beyond the particularity required of a charging

4

document. Government counsel also participated in a phone conference discussing those charts, the government's theory of the case with respect to the conspiracy alleged in Count 19, and the evidence the government intended to present.

9. The summary charts depicted the inflows and outflows to the Summer and OCL accounts. During the call, government counsel identified which of the outflows the government viewed to be violations of 1956 and 1957. The charts described the transactions with enough particularity to make them easily identifiable in the records.

   a. For example, the summary chart for Summer Diagnostics depicted a total of approximately $13,372,000 in transfers from JPMC Account 9271 (which the Bill of Particulars identifies as receiving proceeds of the wire fraud scheme) to Origin Account 2032, in the *two-month period* between December 6, 2021 to February 3, 2022. During the call, the government identified those transactions as concealment, or 1956 violations. The individual transactions that make up that total are, of course, listed in the December 2021 and January 2022 account statements produced for those accounts in discovery.

10. Counsel claims in their status report that, "to the extent that the government's theory is that money from the OCL scheme was deposited into [the Texas Lab]

accounts, the specific transactions at issue are necessary to understand the flow of money that would reveal defendant's knowledge of the illegality of that transaction." Doc. 86 at 4. But counsel is able to tell this is not the case from the bank statements and HRSA claims records produced in discovery, which show that each of the Texas Lab accounts received funds *not* from OCL, but from HRSA's reimbursements on claims billed by that lab. In other words, the Summer accounts laundered the proceeds that Summer received from HRSA; the Apollo account laundered the proceeds that Apollo received from HRSA; and the Softland account laundered the proceeds that Softland received from HRSA. Moreover, it is well-settled that, to prove money laundering, the government needs to show only that defendants knew the funds involved in the transaction were proceeds of an illegal activity – not that they knew the nature of the illegal activity, let alone which act in an ongoing scheme the particular proceeds resulted from. Defendants do not need to have participated in the scheme at all, or even know the particulars of the scheme, to know the funds are proceeds of an unlawful activity.

11. To the extent any further clarification is required, if trial proceeds as currently expected against Khan and Chaudhry, without Ahmed, the government does not intend to introduce in its case in chief at trial the OCL-related financial activity described in Paragraph 1(a)(i-vii) of the Bill of Particulars.

6

12. Thus, the Bill of Particulars sufficiently identifies the financial activity that is the basis for conspiracy alleged in Count 19, and no further order is required.

Respectfully submitted,
ANDREW BOUTROS
United States Attorney

By: */s/Kelly L. Guzman*
KELLY L. GUZMAN
Assistant United States Attorney
219 South Dearborn Street, Fifth Floor
Chicago, Illinois 60604
(312) 353-5300

Dated: April 9, 2026

7