IN THE UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 25 CR 321 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANOSH AHMED, MOHAMED SIRAJUDEEN, | ) | |
| MAHMOOD SAMI KHAN, and | ) | |
| SUHAIB AHMAD CHAUDHRY, | ) | Chicago, Illinois |
| | ) | April 23, 2026 |
| Defendant. | ) | 10:17 a.m. |

TRANSCRIPT OF PROCEEDINGS - STATUS HEARING
BEFORE THE HONORABLE SHARON JOHNSON COLEMAN

APPEARANCES:

For the Government: HON. ANDREW S. BOUTROS
United States Attorney
BY: MS. KELLY L. GUZMAN
Assistant United States Attorney
219 South Dearborn Street, Suite 500
Chicago, Illinois 60604

For Defendant Sirajudeen: KATTEN MUCHIN ROSENMAN LLP
BY: MR. DANIEL J. COLLINS
525 W. Monroe Street
Chicago, Illinois 60661

LAW OFFICE OF STEPHEN CHAHN LEE, LLC
BY: MR. STEPHEN CHAHN LEE
209 S. LaSalle Street, Suite 950
Chicago, Illinois 60604

For Defendant Khan: LEINENWEBER DAFFADA & SANSONETTI
BY: MS. GABRIELLE R. SANSONETTI
120 N. LaSalle Street, Suite 2000
Chicago, Illinois 60602

BLEGEN & ASSOCIATES
BY: MR. PATRICK W. BLEGEN
53 W. Jackson Boulevard, Suite 1424
Chicago, Illinois 60604

Appearances (Cont'd):

For Defendant Chaudhry: CLARK HILL PLC
BY: MR. LEIGH D. ROADMAN
MR. MASON N. FLOYD
130 E. Randolph Street, Suite 3900
Chicago, Illinois 60601

ALSO PRESENT: (Telephonically) Mr. Mahmood Sami Khan
Mr. Suhaib Ahmad Chaudhry

Court Reporter: TRACEY D. McCULLOUGH, CSR, RPR
Official Court Reporter
219 S. Dearborn Street, Room 1232
Chicago, Illinois 60604
312.435.5570
tracey_mccullough@ilnd.uscourts.gov

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE CLERK: 25 CR 321, USA versus Mohamed Sirajudeen, Mahmood Khan, and Suhaib Chaudhry.

MS. GUZMAN: Good morning, Your Honor. Kelly Guzman on behalf of the United States.

THE COURT: Miss Guzman.

MS. SANSONETTI: Good morning, Your Honor. Gabrielle Sansonetti, S-A-N-S-O-N-E-T-T-I. And Pat Blegen on behalf of Mr. Khan, who I believe is on the phone.

THE COURT: All right. Are you on the phone, sir? Mr. Khan, are you on the phone?

MS. SANSONETTI: Oh, you know, he said he was signing in at --

THE COURT: Okay. Well, we'll pass it briefly.

MS. SANSONETTI: Thanks.

THE COURT: Go ahead, Counsel.

MR. ROADMAN: Good morning. Leigh Roadman and Mason Floyd on behalf of Suhaib Chaudhry. And I think he is the one that's on the phone.

THE COURT: Mr. Chaudhry, are you on the phone?

DEFENDANT CHAUDHRY: Yes, Your Honor.

THE COURT: All right. State your name.

DEFENDANT CHAUDHRY: This is Suhaib Chaudhry.

THE COURT: All right. Thank you very much. All right. He is there. And go ahead.

MR. LEE: Yes. Good morning, Your Honor. Stephen Lee and Dan Collins on behalf of Mohamed Sirajudeen, who is present in court.

THE COURT: All right. How are you, sir?

DEFENDANT SIRAJUDEEN: Good morning.

THE COURT: Good morning. Good morning, everyone.

All right. We will -- we can wait, and your client can weigh in when he gets on the phone. But why don't you tell me where we are, Miss Guzman.

MS. GUZMAN: Judge, we've filed -- both parties filed status reports regarding the bill of particulars. So from my perspective, the bill of particulars, you know, our position is that it's sufficient. It puts the defendants on notice of the nature of the charges. And we have a few more documents to produce in discovery, which we're working on.

THE COURT: Hold on one second. Go ahead and state your name for the record who just came on.

DEFENDANT KHAN: Mahmood Khan.

THE COURT: All right. So thank you. Your lawyers are here, and they said you were coming. So you're on now. Thank you.

Go ahead, Miss Guzman.

MS. GUZMAN: Thank you, Your Honor. And so we, we are producing those documents as soon as possible. Other than that, we're -- you know, we have a trial date, and we're

proceeding to trial.

THE COURT: And our trial date is in July still, correct?

MS. GUZMAN: Yes, Your Honor.

THE COURT: All right. So I have the status that the government gave. It was a separate one from the defense? I didn't see that one.

MS. SANSONETTI: Yes, Judge. We filed -- the defense filed a status at docket 82.

THE COURT: Okay.

MS. SANSONETTI: No. I'm sorry.

THE COURT: I'll get it. Just give me a second to pull it up. Hopefully the computer will --

MS. SANSONETTI: Docket 86.

THE COURT: -- will comply. While I'm waiting to pull that up, so it's the government's position that you don't have anything else to disclose and don't have to disclose anything else, is that correct, Miss Guzman?

MS. GUZMAN: In the bill of particulars, yes.

THE COURT: That's what I'm saying.

MS. GUZMAN: Yes. Yes. And then the status report lays out the disclosures that we made through the summary charts and in a phone call in addition to what's in the bill of particulars.

THE COURT: All right. So you think you've actually

gone above and beyond?

MS. GUZMAN: Yes, Your Honor.

THE COURT: All right. Your position?

MS. SANSONETTI: So thank you, Your Honor. We filed the status. At the time we filed the status, we felt that the bill of particulars was insufficient even after having met with the government. Then the government filed their status, and in paragraph 11 in their status they say, "To the extent any further clarification is required, if trial proceeds as currently expected against Khan and Chaudhry, without Ahmed, the government does not intend to introduce in its case in chief at trial the OCL-related financial activity described" in certain paragraphs of their bill of particulars, which we understand now actually includes an additional account. And I think the parties are on the same page about that.

So that was, that was essentially very helpful to us to under --

THE COURT: Hold on. Hold on one second. I just want to say, it's docket 86?

MS. SANSONETTI: This is docket 88. I'm referencing --

THE COURT: 88 is the --

MS. SANSONETTI: The government's.

THE COURT: -- the government's. Yours was 86?

MS. SANSONETTI: Yes.

THE COURT: Okay. Yvette, for some reason it's not showing on my docket.

MS. SANSONETTI: Oh, that's interesting.

THE COURT: So I have, I have --

MS. SANSONETTI: I have a copy --

THE CLERK: Look under Khan.

THE COURT: Oh, I was looking on the wrong defendant.

THE CLERK: Yes. Yes.

THE COURT: That's what happens when you have so many. All right. There we go. All right. We got it. Go ahead.

MS. SANSONETTI: No problem. Is it okay if I start over?

THE COURT: Yes, go ahead.

MS. SANSONETTI: Okay.

THE COURT: You can start over. That's fine.

MS. SANSONETTI: Okay. All right.

THE COURT: We've got time.

MS. SANSONETTI: So we filed docket 86. And at the time that we filed docket 86, we had met with the government, and we were grateful for the government's, you know, agreement to confer with us. But we still remained confused even after that meeting. However, under docket 88, the government filed their status after we had filed ours. And in paragraph 11 the government essentially says, the government does not intend to introduce in its case in chief at trial the O'Hare Clinic

Labs-related financial activity described in the paragraphs in the bill of particulars that are related to the O'Hare Lab scheme.

We were -- that's very helpful in terms of trying -- for us trying to understand how this case was indicted, but it doesn't quite get us all the way there. So with your permission I'd like to just explain where I think there's still some gap between the parties.

THE COURT: Please do. Because that's what I was going to ask you to do today. Tell me what the gaps are, if there are any that you believe, and then also if anyone wants to address the motion to sever, you can also address that. But go ahead.

MS. SANSONETTI: So, and that, and that -- thank you, Your Honor. And that's I think where we're ultimately going to end up potentially.

But this paragraph 11 from the government was very helpful. What our understanding after having spoken with the government this morning, and happy to be corrected if I've misunderstood, is that the government is not intending to introduce any --

THE COURT: Hold on one second. Sit down.

MR. COLLINS: Yes, ma'am.

THE COURT: No, I'm just saying y'all can relax. Yes, just sit down.

All right. Go ahead, Counsel.

MS. SANSONETTI: The government is not intending to introduce any O'Hare Labs' financial transactions under Count 19, which is the money laundering conspiracy count, should Ahmed not be present for trial. That's helpful. However, for purposes of Mr. Khan, the O'Hare Lab scheme is really the challenge that we have. We feel we are not put on notice of his involvement in that scheme, and that discovery has not revealed to us his link to that scheme. And just to refresh Your Honor's recollection, that O'Hare Lab scheme is earlier in time than the Texas Lab scheme.

So what we fear will happen at trial should evidence of the O'Hare Lab scheme come in, is that the government -- we are not on notice of how our client is linked to that earlier scheme. The indictment doesn't put us on notice sufficiently. The discovery doesn't put us on notice sufficiently. The government has admitted that the money laundering transactions with respect to the O'Hare Lab scheme is not coming in at trial. We had thought that if we received the information related to those money laundering transactions, that would help us to identify where is our client. Is he on a bank account? Did he direct a transaction? Where is he involved in the earlier O'Hare Lab scheme?

He is clearly not on any of the bank accounts. He is -- there isn't evidence of him directing a transaction.

That's confirmed by the government's agreement that those O'Hare Lab financial transactions are not coming in the money laundering conspiracy count. So where we still have gap is the O'Hare Labs' wire fraud scheme.

THE COURT: All right.

MS. SANSONETTI: Under -- in our reply, we on page 14, if you look at the indictment, and you instead of aligning the counts in a chronological order by number of count, and instead you look at the counts in time, you can see that Mr. Khan isn't charged substantively with anything related to the overall scheme until Count 7, which is November 18th of 2021. And then not -- and all of the remaining substantive counts related to Mr. Khan are all only associated with the Texas Labs, not any subsequent counts related to the O'Hare Labs.

So understanding that this is an overarching scheme that the government has charged, the defendant still has to be on notice as to the earlier activity, which would, you know, encompass the O'Hare Lab scheme, or we cannot prepare for trial sufficiently. There's just no notice in the indictment.

THE COURT: The Court understands your argument. Do you wish to --

MS. SANSONETTI: Sure.

THE COURT: -- make an argument now?

MS. GUZMAN: Yes, Judge.

THE COURT: Go ahead.

MS. GUZMAN: Mr. Khan's participation in the scheme is focused on the stand-alone transactions that he's charged with. No defendant needs to participate in every stage or every act of a scheme in order to be included in it. There was some involvement. You know, he, he -- as I pointed out to counsel, both Khan and Chaudhry were receiving payments from Anosh Ahmed during the time period of the OCL, the O'Hare scheme in exchange for work they were doing, which the jury could infer was on behalf of that part of the scheme. But certainly their, their involvement ramped up with the Texas Labs.

But, you know, as the Court knows, we charge drug trafficking conspiracies where not every drug distributor participates in every narcotics transaction during the course of the conspiracy. And that's what we have here. There is some evidence of their involvement even at the O'Hare stage. It will be a question for the jury whether they believe that, that they were participating knowingly at that time, but the jury doesn't need to find that to find that they knowingly participated in this scheme, which they did through SoftLand, Summer, Tristate, and Apollo.

THE COURT: So I assume you're still objecting to Mr. Khan being severed?

MS. GUZMAN: Yes, Your Honor. Yes. And the reason is we would present the same evidence. So, for example, during -- while Ahmed and Siraj were billing fraudulently through O'Hare

Labs for, for COVID tests, Mr. Khan was running a Shopify website where he distributed at home test kits to individuals. And then he took the identifiers of the people who purchased those at home test kits and billed them through O'Hare. He submitted them to Mr. Harris -- Mr. Mahmood, who was the biller, and they were at least attempted to be billed through O'Hare.

And I've told counsel about this. It's in the speaking allegations in the indictment. I sent an e-mail pointing them to items in the discovery that showed this, like the Shopify documents and Khan's voice on a recording to talking about that. So that's an example of an act that he took to further the scheme during the O'Hare time period.

MS. SANSONETTI: Judge, may I respond.

THE COURT: You may.

MS. SANSONETTI: Thank you. So just starting with the last thing that the government said. So that evidence, there is evidence of Mr. Khan setting up the website and accepting at home test kit requests. That evidence is coupled with actual live individuals requesting those at home test kits, and at home test kits being purchased and at home test kits being sent out.

The government is correct that there is evidence of -- or at least this stage we believe there's evidence of Mr. Khan sending that -- those patient identifiers to Mr. Mahmood.

However, there is no evidence of Mr. Khan executing any billing.

THE COURT: Wait. Did you just say Mr. Khan sending it to Mr. Mahmood?

MS. SANSONETTI: Yes. It's Ovais.

THE COURT: Isn't Mahmood Khan?

MS. SANSONETTI: This is a different individual who has that last name. So yes, confusing.

THE COURT: All right. So --

MS. SANSONETTI: I'll call him Mr. Ovais.

THE COURT: Okay. Thank you.

MS. SANSONETTI: Mr. Ovais.

THE COURT: Go ahead.

MS. SANSONETTI: Sending it to Mr. Ovais.

THE COURT: Okay. Thank you.

MS. SANSONETTI: And -- but not Mr. Khan having anything to do with submitting billing to HRSA. There's no evidence of that. So there is -- without any evidence of submitting any billing to HRSA, there is no evidence that Mr. Khan is linked to some false misrepresentation or has knowledge of any false representation of an earlier scheme.

Which brings us to our -- the two major points that we have with respect to the severance is, one, if the counts are severed, the O'Hare Lab scheme counts are severed, then this evidence can come in from that government if they have a basis

under relevance under, you know, 401 and 403 to present that evidence if they believe it establishes Mr. Khan's, you know, knowledge of the O'Hare Lab scheme for the counts that he is substantively charged on. Pinkerton wouldn't apply because the O'Hare Lab scheme is earlier in time, but it wouldn't apply anyway.

The, the second thing is that if the counts are severed, then the case becomes much more tailored and narrowed, and there's no risk of evidentiary -- prejudicial evidentiary spillover. And if the counts are severed, then the Court, you know, is relieved of the burden of trying to decide at the close of evidence has the government's case, based on the case that we referred to in our motions that was in front of Judge Kennelly, has the government provided a sufficient link before the jury even gets the case to the earlier fraud scheme?

If they don't present a sufficient link, then there's a mistrial motion that will be filed, and the Court will be in a precarious position of deciding have we just wasted all of this time, or did the government sufficiently prove up the link between Mr. Khan and the earlier scheme? That can all be resolved by just providing sufficient notice of how Mr. Khan is linked to the false representations that were charged in O'Hare -- the O'Hare Lab scheme portion of the case. That is a small ask.

THE COURT: So you're saying --

MS. SANSONETTI: It has not been satisfied.

THE COURT: Excuse me, Counsel. So you're saying that her statements did not provide that for you?

MS. SANSONETTI: They did not, no.

THE COURT: Miss Guzman.

THE COURT: The statements that have been made today --

THE COURT: Yes.

MS. SANSONETTI: -- and everything that has been filed --

THE COURT: Yes.

MS. SANSONETTI: -- we have not been put on notice by the government how Mr. Khan had knowledge of or participated in a misrepresentation, which resulted in payment from HRSA.

THE COURT: All right. Miss Guzman.

MS. GUZMAN: Judge, that's -- I mean, that's the central allegation in the case. There is a lengthy speaking indictment here. There's now a bill of particulars. We've given them discovery. And I have communicated to them above and beyond that discovery what are the specific pieces of evidence that I think show that knowledge, that knowing participation in that stage of the one single overarching scheme that is charged.

THE COURT: All right. And also you want to go ahead and address their request for severance.

MS. GUZMAN: Well -- yes, Your Honor. With respect to the severance request, I mean, we're -- Mr. Ahmed is not scheduled for trial in July. He's already not going to trial with them. So what a motion to sever would do is, you know, hold the trial separately from Mr. Ahmed, which is already functionally happening. That's unfortunate, because all of the same evidence is going to have to come in in both trials, but practically that's, that's what's going to have to occur because Mr. Ahmed's not present to answer for trial right now.

But, but the government's position is that the same evidence would, would come in at both trials, the same evidence of Mr. Khan's participation in the scheme from beginning to end. It may be stronger in one part than another, but that doesn't mean that he wasn't participating the whole time, and that the government isn't entitled to present all of that evidence to the jury for them to decide.

MS. SANSONETTI: The last thing. And I'll say I just want to address the jury point. This isn't a jury issue. It's a notice issue. We're not on notice. We can't prepare for trial.

THE COURT: You don't have to go there.

MS. SANSONETTI: Okay. Thank you.

THE COURT: I understand what a bill of particulars is, yes. All right. So I'll make my decision on that. Go ahead, Counsel.

MR. ROADMAN: I'm just going to add --

THE COURT: Well, again, tell me your client's name.

MR. ROADMAN: Leigh Roadman on behalf of Suhaib --

THE COURT: You've got to get closer to a mic for Miss McCullough.

MR. ROADMAN: I apologize. Leigh Roadman on behalf of Suhaib Chaudhry.

THE COURT: All right.

MR. ROADMAN: And Miss Sansonetti has stated the defense position, and we're in agreement with that. I would just add in, and I think you're already aware of this, Mr. Chaudhry is not charged substantively in the mail fraud scheme at all, whether it be O'Hare or whether it be later. He's just charged in Count 19, which is the money laundering scheme.

THE COURT: Right.

MR. ROADMAN: The government has now said they're dropping out the financial transactions related to O'Hare from the money laundering to prove that up as part of the money laundering scheme. We have a -- you know, the prejudice of -- I hear everybody talking whether there's a link to Mr. Khan and everything, but Mr. Chaudhry's -- the prejudice against him if all this O'Hare evidence comes in, are even more acute. He's not even charged in the mail fraud scheme.

So our motion for severance is a little bit different.

It's the overwhelming prejudice that would result to him. But I'm just putting that on the record. Other than that, Miss Sansonetti has ably stated the defense position.

THE COURT: And it's just a motion to sever. It's not another motion to dismiss?

MR. ROADMAN: It's a motion to sever, yes.

THE COURT: Okay. Thank you. Anything you need to respond to on that, or you believe, again, you stand by what you have presented?

MS. GUZMAN: I'll stand by the written pleadings, Your Honor.

THE COURT: All right. Thank you. And what about as to Mr. Sirajudeen? Step on up.

MR. COLLINS: We anticipate that Mr. Sirajudeen's case is going to resolve short of trial, so we're not taking a position as to the issues that counsel addressed.

THE COURT: All right. So the bill of particulars issue is dead for you? You're done?

MR. COLLINS: Right.

THE COURT: All right. So the trial is coming up soon. So we're going to need to have a final pretrial conference. We haven't set a date on that yet, have we?

MS. SANSONETTI: No, Judge, and that would be appreciated.

THE COURT: Yes. Let's go ahead and set the date.

And let's do it -- what's our exact trial date again?

THE CLERK: July --

MS. GUZMAN: July 4th, right?

THE COURT: July what?

MS. SANSONETTI: July 9th.

MS. GUZMAN: Oh, 9th. Sorry.

THE COURT: Not 4th. You'll be here by yourself.

MS. GUZMAN: There's something else.

THE COURT: Yes, there's something else going on July 4th. All right. So July 9th?

THE CLERK: Yes.

THE COURT: All right. So let's see what we have -- I'll get a decision out on this no later than Monday. And let's see if we can set something. I am looking, Yvette, in -- let's do -- and how long do we think this is going to take again to try?

MS. GUZMAN: Two to three weeks.

THE COURT: Two to three weeks even with just -- with one person dropping out, right?

MS. GUZMAN: Yes, Your Honor.

THE COURT: All right. So let's have the final pretrial -- you'll have an order on this by Monday, and let's get the final pretrial orders in by the 21st of May. And we'll have a conference that first week of June, Yvette. So we could do -- I'll be out of town the day before. I'll be coming back

early in morning on the 10th. We could do the afternoon of the 10th for the final pretrial conference, and then we always can go over to the 11th in the afternoon if we need to keep going.

MS. SANSONETTI: The 10th is fine for the defense.

MS. GUZMAN: It's fine for the government. Thank you.

THE COURT: All right. Defense, the other counsels? Both. All right.

MR. ROADMAN: That's fine.

THE COURT: Okay. So yes, we'll do that. Yvette, you can put in I'm not gone all day.

MR. COLLINS: And, Judge, on behalf of Mr. Sirajudeen, can we excuse his presence for the pretrial conference?

THE COURT: We can.

MR. COLLINS: Thank you, Your Honor.

THE COURT: We definitely can. Yes, we can. His and yours.

MR. COLLINS: Thank you.

THE COURT: I know you might want to be sitting out there, but you all can ... all right.

MS. SANSONETTI: Judge, just working backwards then, and I think we would be fine conferring with the government with the Court's permission on deadlines for expert and 404(b) and Santiago and whatnot. But working backwards then, motions in limine would be due on May 27th based on your standing order, and then June 3rd for the responses?

THE COURT: Yes.

MS. SANSONETTI: And, Judge, the only issue that may come up is that -- and again, we'll confer with the government first and then file something if there's a problem. But I think maybe having early expert disclosures and then an early Santiago proffer in this case given the issues related to might make sense, so --

THE COURT: That would help the Court. It's a lot to go through if you all end up having something extensive, so all right. So give me a date.

MS. GUZMAN: Judge, can we do the Santiago proffer by, let's see -- can we have a month to do that? So if we did it by May 23rd -- whoops. That's a Sunday. So May 25th that's still over a month before trial.

MS. SANSONETTI: Well --

MS. GUZMAN: Six weeks before trial.

MS. SANSONETTI: -- that's only two days before motions in limine are due, so we would need time to --

THE COURT: The motions in limine are going to be -- you know, if we're doing them all at the same time, you may have to get it in before then. So again, I'll have an order out for you by Monday at the lateness. So if you can get a Santiago proffer done within three weeks after that, where would that put us, Yvette?

MS. GUZMAN: That's fine, Judge.

THE COURT: Where does that put us, Yvette?

MS. SANSONETTI: So that puts us at it looks like --

THE CLERK: May 18th.

THE COURT: May 18th.

MS. SANSONETTI: Oh, is that Monday? One, two, three. May 18th. And then that gives us a week, a week to file. Okay.

THE COURT: Yes.

MS. GUZMAN: Thank you, Your Honor.

THE COURT: All right.

MS. SANSONETTI: Judge, could we get expert disclosure on that date as well?

THE COURT: Yes, all on the same day.

MS. SANSONETTI: And then you're going to set government exhibits and all that other stuff. Okay. Great.

THE COURT: Well --

MS. SANSONETTI: Or should we do that?

THE COURT: No. That's part of the final pretrial order. That's part of the conference.

MS. SANSONETTI: Okay.

THE COURT: So you'll --

MS. SANSONETTI: That will be part of the conference.

THE COURT: -- you'll be filing the exhibits at the same time you file the order, and we'll deal with that at the conference.

MS. SANSONETTI: That sounds fine.

THE COURT: All right. If you all can work them out before then, that's up to you all. But as far as me making rulings on them, I'll do it at the conference.

MS. SANSONETTI: Okay.

THE COURT: And that will be part of the order. They should be included in the order, your exhibits.

MS. SANSONETTI: Okay.

THE COURT: Okay?

MS. SANSONETTI: Thank you.

THE COURT: Anything else?

MR. ROADMAN: Your Honor, for the final pretrial conference do you want Mr. Chaudhry and Mr. Khan here in person?

THE COURT: They should be here. I mean, that's their right.

MR. ROADMAN: Yes.

THE COURT: All right. So they can be here by phone. Whatever you all think is best for you, but yes.

MR. ROADMAN: All right. We'll discuss it with them.

THE COURT: Most criminal defendants come, but I've had a few that have been by phone, so --

MS. SANSONETTI: Okay. Thank you.

MR. ROADMAN: Thank you, Your Honor.

THE COURT: -- you all decide. All right. Anything

else from the government?

MS. GUZMAN: No, Your Honor.

THE COURT: We've already excluded time till the trial date, so that's not an issue. All right. Thank you all very much.

MS. SANSONETTI: Thank you so much, Your Honor.

MS. GUZMAN: Thank you.

THE COURT: All right. Look forward to your submissions. Thank you.

MR. COLLINS: Thank you, Your Honor.

THE COURT: Thank you, guys.

(Concluded at 10:45 a.m.)

* * * * *

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

/s/ TRACEY D. McCULLOUGH May 15, 2026
TRACEY D. McCULLOUGH, CSR, RPR
Official Court Reporter